UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

LILIANA TRAFFICANTE,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INFORMATION

10CRIM 650

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

JUDGE BATT[S]

COUNT ONE
(Conspiracy to Commit Wire Fraud)

The United States Attorney charges:

The Defendant

1.   At all times relevant to this Information, LILIANA TRAFFICANTE, the defendant, held herself out as the founder and owner of a Manhattan-based entity called International Dreams. TRAFFICANTE acted as the principal of, or was otherwise affiliated with, a number of entities related to International Dreams, including GoOcean Park and Resort LLC, Bouchville Manors, The Little Water Park That Could, and Signature A (collectively, the "Trafficante Entities").

The Scheme To Defraud

2.   From at least in or about 2005 through June 2010, LILIANA TRAFFICANTE, the defendant, and her co-conspirators perpetrated a scheme to defraud investors and lenders by soliciting more than $1 million under false pretenses, failing to use investors' and lenders' funds as promised, and misappropriating the investors' and lenders' funds to

TRAFFICANTE's own benefit without the knowledge or authorization of the investors or lenders. Specifically, TRAFFICANTE falsely represented that the funds would be used to purchase land or to fund the construction of a water park for foster children (the "Water Park Project"). Instead, TRAFFICANTE used much of the monies given to her for the Water Park Project to pay for personal expenses, including rent, food, and repayment of prior personal loans, and to make payments to earlier investors with money received from later investors.

3. LILIANA TRAFFICANTE, the defendant, solicited over $1 million in funds from investors for the purported "Water Park Project." To execute the scheme, TRAFFICANTE made numerous false statements to investors and lenders in order to induce them to provide money to the Trafficante Entities.

a. For example, in March 2008, TRAFFICANTE falsely told one lender that land had been located for the Water Park Project, that the location was rich with natural resources, and that money was needed to exploit the property's natural resources prior to construction of the Water Park Project. Based on these misrepresentations, the lender agreed to loan $100,000 to TRAFFICANTE, which was wired to one of the Trafficante Entities. In connection with this loan, TRAFFICANTE and the lender executed a promissory note that falsely stated that the "purpose" of the $100,000 loan was to help "GoOcean Water Park & Resort purchase excavating equipment." In truth and in fact, as

TRAFFICANTE well knew, no land was purchased, no natural resources had been located, and no equipment was purchased; instead, TRAFFICANTE used the money to, among other things, pay $40,000 toward overdue rent for a business office owned by her family.

      b. In April 2008, TRAFFICANTE falsely told a different lender that TRAFFICANTE had secured several million dollars in funding for the Water Park Project but needed a bridge loan until the transaction closed. Based on those misrepresentations, the lender wired $250,000 to one of the Trafficante Entities. Later that day, TRAFFICANTE used some of the funds to (i) repay a $125,000 personal loan, and (ii) pay $15,000 to an earlier investor.

    4. In order to keep the scheme from collapsing, LILIANA TRAFFICANTE, the defendant, made false statements to investors and lenders about the purported progress of the Water Park Project, and specifically about how major financing for the project was expected in short order.

      a. For example, TRAFFICANTE told a lender that TRAFFICANTE had hired a specific, experienced attorney (whom she named) to resolve problems that TRAFFICANTE claimed to be having with banks. Specifically, TRAFFICANTE claimed, among other things, that the banks were refusing to accept millions of dollars of wire transfers into accounts relating to the Water Park Project. In truth and in fact, as TRAFFICANTE well knew,

3

the attorney was not retained by TRAFFICANTE, had never performed any services for TRAFFICANTE or the Trafficante Entities, and did not know who TRAFFICANTE was.

5. In addition, to keep the scheme from collapsing, LILIANA TRAFFICANTE, the defendant, arranged for co-conspirators to communicate with investors who complained to TRAFFICANTE.

a. For example, after consulting with TRAFFICANTE, a co-conspirator not named as a defendant herein ("CC-1") pretended to be an investor who intended to make a multi-million dollar investment. CC-1 falsely told investors, among other things, that a portion of CC-1's investment would be used to repay all of the previous investors, and that the remainder would fund the purchase of the land and the development of the Water Park Project. CC-1 also urged investors not to complain to authorities or others or else financing for the Water Park Project would be in jeopardy. In truth and in fact, CC-1 did not intend to invest any money, and was merely trying to quiet disgruntled investors.

b. Another co-conspirator not named as a defendant herein ("CC-2"), after consulting with TRAFFICANTE, called investors and lenders and promised imminent repayment of the monies they had provided to the Trafficante Entities. In truth and in fact, as Trafficante well knew, no such repayment was planned.

4

STATUTORY ALLEGATION

6. From at least in or about 2005, up to and including in or about June 2010, in the Southern District of New York and elsewhere, LILIANA TRAFFICANTE, the defendant, and others known and unknown, unlawfully, willfully and knowingly, did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

7. It was a part and an object of the conspiracy that LILIANA TRAFFICANTE, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343.

Overt Acts

8. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York, and elsewhere:

a. On or about September 5, 2006, a $5,000 wire transfer was made from an account at National City Bank in Ohio

to an account controlled by LILIANA TRAFFICANTE, the defendant, at Commerce Bank in New York, New York (the "Trafficante Account").

      b.   On or about March 24, 2008, a $100,000 wire transfer was made from an account at Regions Bank in Tennessee to the Trafficante Account.

      c.   On or about April 15, 2008, a $250,000 wire transfer was sent from an account at Washington Mutual Bank in Utah to the Trafficante Account.

      d.   On or about April 15, 2008, TRAFFICANTE arranged for a wire transfer in the amount of $125,000 to be made from the Trafficante Account to a different account at Commerce Bank in order to repay a personal loan made to TRAFFICANTE.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

      9.   As the result of committing the conspiracy to commit wire fraud offense in violation of Title 18, United States Code, Sections 371 and 1343, alleged in Count One of this Information, LILIANA TRAFFICANTE, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

## Substitute Asset Provision

10. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461)

*Preet Bharara* MPB
PREET BHARARA
United States Attorney