```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LILIANA TRAFFICANTE,

                Petitioner,          16-CV-1316 (DAB)
     v.                              10-CR-650 (DAB)

UNITED STATES OF AMERICA,            MEMORANDUM AND ORDER

                Respondent.
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge:

Before the Court is Petitioner Liliana Trafficante's pro se Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2255 ("Pet."). Petitioner challenges the sentence of 41 months' imprisonment, to be followed by three years' supervised release, imposed by this Court on June 17, 2014. The Government opposes Petitioner's Motion. (Government's Opposition to Petition for Writ of Habeas Corpus ("Gov't Opp.")). For the reasons set forth below, the Motion is DENIED.

I.   Background

On July 26, 2010, pursuant to Petitioner's Waiver of Indictment, the Petitioner was charged, by a Felony Information, with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. (Docket 10-cr-650, ECF ("ECF") No. 9.) The Information alleged that, between 2005 and June 2010, Petitioner perpetrated a scheme to defraud investors by soliciting more than $1 million and then using the funds for personal expenses. (Information 1-

2; ECF No. 9.) Specifically, Petitioner was charged with falsely telling investors and lenders that the funds would be used to purchase land or construct a water park for foster children, when no such project existed. (Id.)

Mr. John C. Meringolo was appointed as Petitioner's attorney on May 26, 2010. (ECF No. 5.) According to Mr. Meringolo, Petitioner never claimed that she was innocent or presented a viable defense to the charge. (Meringolo Affidavit in Response to Petitioner's Motion ("Meringolo Aff.") ¶ 4.) On September 7, 2010, Petitioner, through Mr. Meringolo, executed a Plea Agreement with the Government. (Gov't Opp. Ex. B.) The Agreement calculated Petitioner's applicable Guidelines Offense Level as 21, based on, inter alia, (1) an increase of two levels because the offense involved 10 or more victims, see U.S.S.G. §2B1.1(b)(2)(A)(i); and (2) an increase of two levels because the offense involved misrepresentations that the Petitioner was acting on behalf of a charitable organization. (See U.S.S.G. §2B1.1(b)(8)(A)[1]; Gov't Opp. Ex. B at 2.) Accordingly, the Agreement provided that the stipulated Sentencing Guidelines range was 37-46 months. (Gov't Opp. Ex. B at 3.) The Agreement also stated that Petitioner would not file an appeal or bring a collateral challenge of any sentence within the stipulated

---

[1] This enhancement is currently located at Section 2B1.1(b)(9)(A).

Guidelines range set forth therein. (Id. at 4.)  On September 21, 2010, Petitioner pled guilty to the Information before this Court. (ECF No. 12.)

At the plea hearing, the Court asked Petitioner a number of questions designed to assess her competency, and found her fully competent to enter an informed plea. (September 21, 2010 Tr. 3:9-4:25.) Petitioner stated that she was satisfied with Mr. Meringolo's representation. (Id. 4:19-21.) The Court discussed Petitioner's potential penalties, and explained that although the Agreement contained a calculation of the Guidelines range, the Court would not be able to determine the applicable sentencing range until after the Presentence Report and the parties' responses were submitted. (Id. 12:2-8.) Petitioner stated that she understood. (Id. 12:9.) The Court asked Petitioner if she understood that, according to the Plea Agreement, she was giving up the right to appeal any sentence as long as it fell within the range outlined in the Agreement. (Id. 14:16-20.) Petitioner said "yes." (Id. 14:21.) The Court confirmed that Petitioner had read and understood the Agreement, discussed it with her attorney, and that no one induced, threatened or forced her to either plead guilty or enter into the Agreement. (Id. 13:20-14:25.)

Probation submitted a Presentence Investigation Report ("PSR") on December 3, 2010, reflecting the offense level and

3

sentencing range outlined in the Plea Agreement. (Dec. 3, 2010 PSR at 4.) However, while out on bail and before her sentencing date, Petitioner was arrested and convicted on a new state charge. (Apr. 30, 2014 PSR ¶ 43-44.) This elevated Petitioner's Criminal History Category from I to II, Id. ¶ 45, and increased the Guidelines range from 37-46 to 41-51 months. (Id. ¶ 82.) During the time between the plea hearing and sentencing, Mr. Meringolo, along with Petitioner and others on Petitioner's behalf, submitted multiple sentencing submissions to the Court. (June 17, 2014 Tr. 4:16-5:2.)

On June 17, 2014, the Court sentenced Petitioner to 41 months' imprisonment, followed by three years' supervised release, and restitution in the amount of $750,000. (Id. 11:2-23.) The Court adopted the Guidelines Offense Level of 21 and the Criminal History Category of II, as set forth in the final PSR. (Id. 10.)

On June 25, 2014, Petitioner, through Mr. Meringolo, filed a Notice of Appeal. (ECF No. 31.) On July 10, 2014, Mr. Meringolo moved to withdraw as counsel of record. (Appellate Docket 14-2304 ("Apl. Dkt.") No. 4.) This motion was granted, and Mr. Randolph Z. Volkell was appointed as new counsel. (Apl. Dkt. No. 8.)

Mr. Volkell filed an Anders brief on September 22, 2014, noting that Petitioner had validly waived her right to appeal

4

and alleging that there was no reasonable basis to challenge the sentence. (Apl. Dkt. No. 23 at 7-8.) Petitioner filed a pro se response on October 20, 2014, Apl. Dkt. No. 44, and the Government moved for dismissal and summary affirmance on December 19, 2014. (Apl. Dkt. No. 50.) On March 20, 2015, the Second Circuit granted Mr. Volkell's motion for withdrawal and the Government's motions for dismissal and summary affirmance. (Apl. Dkt. No. 59.)

While the appeal was pending, Petitioner also filed her first pro se habeas petition on July 10, 2014. (ECF No. 35.) The Court denied this petition because of the pendency of Petitioner's direct appeal. (ECF No. 38.)

Petitioner, acting pro se, filed the instant Petition on January 26, 2016. (Pet. at 1.) She asserts that: (1) her Offense Level should not have been enhanced pursuant to U.S.S.G. § 2B1.1(b)(8)(A) because she had formed a non-profit in connection with the solicitation involved in her offense; (2) her Offense Level should not have been increased pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because three of the individuals counted as victims were in fact unindicted coconspirators; (3) her Criminal History Category was wrongfully enhanced from Category I to Category II because her trial attorney allowed her to plead guilty to the state charge while her federal sentencing was

pending;[2] (4) she received ineffective assistance of counsel because her trial attorney failed to make any of the arguments on the first two grounds listed above and wrongfully advised her on the third; and (5) she received ineffective assistance from her appellate counsel because he also failed to recognize these alleged defects and did not ask Petitioner any questions about her concerns about the case. (Pet. 1-3.) Petitioner additionally alleged in a Letter to the Court dated May 11, 2016, that she received ineffective assistance of counsel because Mr. Meringolo failed to respond to the Court's comment at sentencing that Petitioner's son had never received a medical diagnosis. (May 11, 2016 Letter at 2; ECF No. 54.)

The Government submitted a response on October 17, 2016, opposing the Petition on all grounds. (Dkt. 16-cv-1316, ECF No. 16.) Petitioner did not submit a reply.

II. Discussion

a. Legal Standard for § 2255 Petitions

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), an eligible federal prisoner is entitled to habeas relief if he can demonstrate that "the sentence was imposed in violation of the Constitution or laws of the United States, or

---

[2] Petitioner was represented by different court-appointed counsel in her state case. Meringolo Aff. ¶ 13.

that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citation omitted). AEDPA also provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

It is "well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008) (internal quotation marks omitted). This applies equally to collateral attacks under § 2255, even if the grounds for the challenge "arose after the plea agreement was entered into." Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001). While a waiver of the right to appeal is presumptively enforceable, there are certain exceptions that "occupy a very circumscribed area of our jurisprudence," United States v. Gomez-Perez, 215 F.3d 315, 319

7

(2d Cir. 2000), including where the waiver was not made knowingly, competently, and voluntarily; where the sentence was imposed based on constitutionally impermissible factors; where the government breached the plea agreement; or where the sentencing court "failed to enunciate any rationale for the defendant's sentence." Id. Waivers may be upheld "even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." Id.

b. Application to Petitioner's Claims

The sentencing range set forth in the Plea Agreement was 37-46 months. However, based on Petitioner's intervening state conviction and the corresponding change in her Criminal History Category, the applicable sentencing range had increased to 41-51 months by the time of her sentencing. The Court sentenced her to 41 months, a sentence at the very bottom of the Guidelines range and well within the range provided in the Plea Agreement. The waiver of appealability and collateral attacks included in the Agreement is thus presumptively reasonable.

Petitioner does not contend the waiver was made involuntarily or that it falls into one of the other exceptions to the presumption of enforceability. Moreover, a review of the record reveals no facts that might lend themselves to such an

argument. Petitioner signed the Agreement after going over it with her attorney, and reaffirmed her understanding of and assent to the terms of the Agreement in her allocution before the Court. The Court described its reasoning for sentencing Petitioner as it did, June 17, 2014 Tr. 9:9-11:4, and sentenced her at the bottom of the applicable range. Thus, Petitioner's collateral attack cannot be maintained.

Even were this not the case, the substance of Petitioner's challenges lacks merit. Petitioner's Criminal History Category was properly enhanced to Category II because she was convicted on new charges before her sentencing date; similarly, even giving credence to Petitioner's claim that three alleged victims were actually unindicted coconspirators, she is left with 21 victims, well over the 10 required for the relevant enhancement. (See Apr. 30, 2014 PSR ¶ 24.) And as the Government points out, Second Circuit law does not preclude application of the enhancement provided by U.S.S.G. § 2B1.1(b)(8)(A) when the organization used in connection with a defendant's misrepresentation was an actual charitable organization. See United States v. Kinney, 211 F.3d 13, 21 (2d Cir. 2000) (defendants collecting money on behalf of a legitimate organization fall within the ambit of the enhancement where they "ensnar[ed] donors with falsehoods designed to generate contributions .... and exploit[ed] ... victims' altruism to reap

9

personal, pecuniary gain." (internal brackets and quotation mark omitted)).  Moreover, the Court notes that even if these guidelines were somehow misapplied, they were a part of an agreement that Petitioner voluntarily acceded to and benefitted from. See Gomez-Perez, 215 F.3d at 319.

Petitioner's ineffective assistance of counsel claims do not undermine this conclusion. As described below, the Court disagrees that Petitioner's counsel was ineffective. And because Petitioner's challenges to the Guidelines enhancements are meritless and in contravention of a valid waiver, her trial counsel could not have reasonably or effectively made them before the Court.

c. Legal Standards for Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the two-part test established by the Supreme Court in Strickland v. Washington. Under Strickland, Petitioner must show that (1) defense counsel's performance was objectively unreasonable, and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also Hill v. Lockhart, 474 U.S. 52, 58 (1985) (Strickland test applies to challenges to guilty pleas). Petitioner has the burden of establishing both elements of the Strickland test. Strickland, 466 U.S. at 689.

Under Strickland's first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In the context of plea negotiations, "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted).

To establish prejudice under Strickland's second prong, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. For guilty pleas, the Supreme Court has held that a defendant can establish prejudice where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). For an ineffective assistance of counsel claim to survive a section 2255 waiver, the claim must "relate[] to the negotiation and entry of the

11

plea agreement." Herrera-Gomez v. United States, Nos. 08 Civ. 7299(JGK), 05 Cr. 495(JGK), 2009 WL 4279439, at *4 (S.D.N.Y. Dec. 1, 2009) (internal brackets omitted) (quoting United States v. Owolabi, Nos. 07 Civ. 9487(DC), 04 Cr. 1316(DC), 2008 WL 1809180, at *2 (S.D.N.Y. Apr. 18, 2008)).

### d. Application to Petitioner's Claims
#### i. Petitioner's Trial Counsel

Petitioner claims that she received ineffective assistance of counsel because her trial attorney failed to raise any of the arguments listed above.

Petitioner's claim fails for three reasons. First, she does not allege that she plead guilty involuntarily, or that there were any deficiencies related to the negotiation and entry of the Plea Agreement. Indeed, she swore that she voluntarily entered into the Plea Agreement on two separate occasions before the Court. Mr. Meringolo's affidavit further states that Petitioner had always wished to plead guilty and accepted responsibility for her actions, Meringolo Aff. ¶ 3—a claim corroborated by the Petitioner's own letter to Mr. Meringolo after her conviction and sentencing. (See Meringolo Aff. Ex. C.) That Petitioner was convicted on a state charge between the date of the Agreement and her sentencing does not change this

12

analysis, as she was ultimately sentenced within the range provided in the Agreement.

Second, as discussed above, Petitioner's claims that the enhancements were improperly applied lack merit, and thus, her trial counsel did not act objectively unreasonably by failing to assert them. Nor was her trial counsel's failure to advise on these claims outside the "range of competence" demanded of criminal attorneys, so as to vitiate the voluntariness of her plea. See Hill, 474 U.S. at 56. With respect to Petitioner's claim that her trial counsel was ineffective for failing to adequately address the Court's comment regarding her son's diagnosis, Petitioner does not claim, nor could she, that any such challenge would have changed the outcome of the proceeding, which in this case was the Court's sentencing of Petitioner within the range set forth in the Agreement. Because Petitioner's claims lack merit, Petitioner and her counsel would have gained nothing by asserting them.

Finally, Petitioner does not assert that but for the application of these enhancements, she would not have pled guilty and would have gone to trial. See Id. at 59. Instead, she seeks to retain the benefits of the Agreement while simultaneously attacking its finality. Petitioner did not receive ineffective assistance of counsel, and cannot challenge her sentence.

### ii. Petitioner's Appellate Counsel

Petitioner also claims that she received ineffective assistance of counsel because her appellate counsel failed to assert the arguments raised in her Petition.

In filing an Anders brief, Petitioner's appellate counsel, Mr. Volkell, certified that, "after a conscientious examination" of the record, he found no nonfrivolous issues of appeal. Anders v. State of Cal., 386 U.S. 738, 744 (1967). Mr. Volkell followed the proper procedures by submitting "a brief referring to anything . . . that might arguably support the appeal." Id. The Circuit Court granted Mr. Volkell's motion to withdraw because it found, "after a full examination of all the proceedings," that the case was "wholly frivolous." Id. Thus, "[i]n granting the motion, the Court of Appeals affirmed that counsel had met the proper standards of reasonableness in withdrawing." Owolabi, 2008 WL 1809180, at *4; cf. Anders, 386 U.S. at 745 ("such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with . . . diligence.").

While the granting of an Anders motion may not result in a per se bar to subsequent ineffective assistance of counsel claims, Petitioner's challenge here is based on the same grounds asserted against her trial counsel, i.e., appellate counsel's

14

failure to raise the supposed misapplication of the sentencing enhancements and Criminal History Category set out in the Plea Agreement. Like the Circuit Court, this Court finds, for the reasons outlined above, that Mr. Volkell could not have made nonfrivolous arguments based on these claims, and that Petitioner was denied no effective assistance of counsel based on his failure to do so. Indeed, prejudice in the context of an Anders filing requires that Petitioner show "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. 259, 285 (2000). Given that Petitioner's plea and sentencing were addressed in Mr. Volkell's Anders brief, see Apl. Dkt. No. 23, and Petitioner raised the ineffective assistance of counsel claim in her pro se reply, see Apl. Dkt. No. 45, Petitioner is unable to make such a showing here.

### III. Conclusion

For the reasons set forth above, Petitioner's § 2255 motion is DENIED.

As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c). Therefore, pursuant to 28 U.S.C. §

1915(a)(3), in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

DATED:   New York, New York

November 29, 2016

                                                _____
                                                Deborah A. Batts
                                                United States District Judge